## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|                                                    |                            |
|----------------------------------------------------|----------------------------|
| WAYNE D. BUTTS,                                    |                            |
|     Petitioner,                |                            |
| v.                                                 | Case No.: 2:12cv210        |
| HAROLD W. CLARKE, Director,                        |                            |
| Virginia Department of Corrections,                |                            |
|     Respondent.                |                            |

## REPORT AND RECOMMENDATION

Before the Court is the Petitioner Wayne D. Butts's ("Butts") Petition for a Writ of *Habeas Corpus* filed on April 18, 2012, pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition was referred to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) & (C), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72. On June 21, 2013, the Attorney General on behalf of the Respondent filed a Motion to Dismiss ("the Motion"), ECF No. 39, a memorandum in support, ECF No. 40, a Rule 5 Answer, ECF No. 38, and a *Roseboro* Notice, ECF No. 41. Petitioner filed a response in opposition to the Respondent's Motion, ECF No. 44, and a supplemental response, ECF No. 46. By Order dated July 25, 2013, the Court gave Petitioner an additional opportunity to file another supplemental response by August 15, 2013, after he had an opportunity to listen to the recording from his disciplinary hearing. ECF No. 47. Because Petitioner has not filed another supplemental response, and the time to do so has passed, and because the Respondent has not filed a reply memorandum to Petitioner's opposition, and likewise the time to do so has passed, the Motion is now ripe for disposition. After reviewing the briefs, the undersigned declines to hold an

evidentiary hearing and disposes of the Motion on the papers, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the reasons discussed below, the Court **RECOMMENDS** that the Respondent's Motion to Dismiss, **ECF No. 39**, be **GRANTED** and Mr. Butts' Petition, **ECF No. 1**, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Butts is currently incarcerated following his conviction for a combination of misdemeanor and felony charges, including breaking and entering, trespassing, petite larceny, and probation violation. He is currently incarcerated at the Powhatan Correctional Center located in State Farm, Virginia. Similar to a previous *habeas* petition Butts filed in this Court, *see Butts v. Clarke*, 2:12-cv-42, the instant allegations involve a disciplinary hearing that was held while Butts was incarcerated at the Deep Meadow Correctional Center in Powhatan, Virginia.

On December 28, 2011, Butts pled not guilty to violating Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 861.1(V)(B)(212): "Threatening Bodily Harm." ECF No. 2 ¶ 2. It was alleged that on December 15, 2011 around 4:20 p.m., after he was informed that because he had a negative inmate account balance photocopies of his legal papers would not be made for him, Butts became very defensive and began to yell and threaten a staff counselor. ECF No. 2 Ex. 1 at 1. Butts was provided a copy of the "Disciplinary Offense Report" the same day at 7:55 p.m. *Id.* At the disciplinary hearing, Butts was found guilty by the hearing officer and sentenced to twenty-five days in isolation.[1] ECF No. 2 at ¶ 2; Ex. 1 at 2. Butts appealed the decision of the hearing officer to Warden H.L. Diggs on January 12, 2012, and alleged: (1) he was denied due process because he was not given an opportunity to present

---

[1] Butts states it was twenty-eight days in his memorandum in support of his petition, ECF No. 2 ¶ 2, but the hearing officer's penalty is listed as "Penalty: Isolation 1 to 30 Days – Imposed Value: 25 Days, *id.* Ex. 1 at 2, which Butts confirmed on his disciplinary appeal form that he filled out, *id.* Ex. 2 at 3 ("Penalty: (25) Days Isolation.").

witnesses and evidence, or argue the accusation; (2) he was denied due process because the hearing officer was not an objective and impartial decision maker, he was not allowed to provide witnesses that were necessary to prove that the statements given by the reporting officer were not true, and he was not given an inmate advisor until fifteen minutes before the hearing; and (3) the charged violation should have been "insolent language or behavior" under subsection (222) and not "threatening bodily harm" under subsection (212). ECF No. 2 ¶ 3. The Warden responded to all of Butts' allegations and denied his appeal on January 17, 2012. *Id.* ¶ 4; Ex. 2. After exhausting his administrative remedies, Butts filed a petition for writ of *habeas corpus* with the Supreme Court of Virginia on February 10, 2012, which was subsequently denied on February 29, 2012. *Id.* ¶ 5; Ex. 3 (stating "*habeas corpus* does not lie in this matter"). Butts alleges that as a result of this underlying disciplinary conviction, and after multiple hearings by the Institutional Classification Authority ("ICA"), his Good Conduct Allowance ("GCA") level was raised from Level II to Level III, thus changing his date of release from December 31, 2014 to March 14, 2015. *Id.* ¶ 11; Ex. 6.

On April 18, 2012, while still in the custody of VDOC, but now incarcerated at the Powhatan Correctional Center, Butts filed the instant 28 U.S.C. § 2254 petition for a writ of *habeas corpus*. ECF No. 1. In it he seeks *habeas* relief, maintains he was denied his Fourteenth Amendment right to due process, and requests that the underlying disciplinary conviction be expunged, that he be restored to GCA Level I, and that he be given credit for good time taken as a result of the underlying disciplinary conviction. His grounds for *habeas* relief are:

(1) denial of due process in ICA Hearings related to special housing status review and the increase of GCA level related to the disciplinary hearing. ECF No. 1 at 6; ECF No. 2 ¶¶ 13-14;

3

(2) denial of due process in the underlying disciplinary hearing because (i) the hearing officer was not an objective and impartial decision maker, (ii) he was not allowed to present witnesses on his own behalf, and (iii) he was given an inmate advisor only fifteen minutes prior to the hearing. ECF No. 1 at 7; No. 2 ¶¶ 15-18; and

(3) the evidence was insufficient to sustain a conviction for "threatening behavior" under subsection (212) and more appropriately fits the charge of "insolent language and behavior" under subsection (222). ECF No. 1 at 9; No. 2 ¶ 19.

## II. ANALYSIS

### A. Butts exhausted his available state court remedies.

Section 2254 petitions challenge a state's custody of a prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal *habeas* relief." *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To exhaust state remedies, a *habeas* petitioner must fairly present the substance of his claim to the state's highest court." *Id.* (citing *Matthews*, 105 F.3d at 911). In Virginia, that court is the Virginia Supreme Court. "The burden of proving that a claim is exhausted lies with the *habeas* petitioner." *Id.* (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

The parties agree that Butts has exhausted his available state court remedies, and the Court concurs. *See* ECF No. 2 ¶ 4; No. 40 ¶ 3. Because "threatening bodily harm" (212) is a Category II Offense, the Warden's denial of Butts' appeal was the final administrative action by

VDOC. *See* ECF No. 2 Ex. 2 at 3 (**"Category II Offenses cannot be appealed to the Regional Director,** except under Section XXI and XXVII of Operating Procedure 861.1.") (emphasis in original). As none of the conditions under OP 861.1(XXI) apply here, Butts exhausted his administrative remedies. *See* OP 861.1(XXI) ("Category II convictions cannot be appealed to the Regional Administrator unless at least one of the following [conditions] applies: The Facility Unit Head has declined to respond . . . has exceeded the time frame to respond . . . has failed to address each issue raised in the offender's appeal . . . the conviction is for offense codes 218 or 236 . . . the facility unit head is the reporting officer; regional administrator is the first level of appeal. . . [none of which apply here]); *see also* D.O.P. 861.1(XXVII)).

On February 13, 2012, Butts filed a petition for a writ of *habeas corpus* in the Supreme Court of Virginia, alleging the same three grounds he presents in the instant Petition. *See* ECF No. 40 Ex. 1 at 4. By order dated February 29, 2012, the Supreme Court of Virginia was "of the opinion that *habeas corpus* does not lie in this matter and the writ of *habeas corpus* should not issue as prayed for. It is therefore ordered that the said petition be dismissed." ECF No. 2 Ex. 3; ECF No. 40 ¶ 5. Butts met his burden and satisfied the exhaustion requirement by presenting the substance of his claim to the highest state court. *See Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)).

**B. The Supreme Court of Virginia's dismissal of Butt's *habeas* petition was not an adjudication "on the merits" under 28 U.S.C. § 2254(d). Accordingly, this Court reviews Butts' claims *de novo*.**

By stating "*habeas corpus* does not lie in this matter" when dismissing Butts' state *habeas* petition, the Supreme Court of Virginia did not adjudicate the merits of his claim. The Court presumes that that Supreme Court's decision applied the following principle from *Carroll v. Johnson*:

> [D]isputes which only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate at which a prisoner earns good conduct or sentence credits . . . are not proper matters for *habeas corpus* jurisdiction because an order entered in the petitioner's favor in those cases will not result in an order interpreting convictions or sentences that, on its face and standing alone, will directly impact the duration of the petitioner's sentence.

278 Va. 683, 685 (2009) (citation omitted). Here, Butts claims that because of the underlying conviction, his GCA level increased from Level II to Level III, which delayed his expected release date from December 31, 2014 to March 14, 2015. Because the Supreme Court did not adjudicate the merits of Butts' claim, a *de novo* standard of review applies in this Court. *See Higdon v. Jarvis*, No. 7:11cv330, 2012 WL 738731, at *4 (W.D. Va. Mar. 5, 2012) ("The Supreme Court of Virginia dismissed petitioner's state *habeas* petition because '[state] *habeas corpus* does not lie in this matter' pursuant to *Carroll* . . . . Therefore, the Supreme Court of Virginia's dismissal of petitioner's state *habeas* petition did not constitute an adjudication 'on the merits' for the purposes of 28 U.S.C. § 2254(d) . . . . Accordingly, the court reviews petitioner's claims *de novo*.") (citations omitted).

Similar to his previous federal *habeas* petition, Butts alleges violations of his due process rights when prison officials allegedly violated disciplinary hearing procedures. "It is well established that prisoners cannot be subjected to arbitrary discipline by prison officials." *Burke v. Clarke*, No. 1:12cv755, 2012 WL 5921168, at *2 (E.D. Va. Nov. 26, 2012) (citing *Howard v. Smyth*, 365 F.2d 428 (4th Cir. 1966)). At the same time, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," *id.* (citation omitted), such that a violation of institutional

procedures by prison officials does not also mean that a constitutional violation has occurred and *habeas* relief is warranted.

> When a loss of statutory good-time credits . . . is at issue, the Supreme Court has mandated procedural safeguards for prison disciplinary hearings, including advance written notice of charges, written findings, and an opportunity—when consistent with an institutional safety and correctional goals—for the inmate to call witnesses and present evidence in his defense.

*Burke*, 2012 WL 5921168, at *2 (citing *Wolff*, 418 U.S. at 563-67). For the following reasons, the Court would find that the prison officials did not violate Butts' due process rights under *Wolff*.

### C. Ground One: denial of due process in ICA hearings related to special housing status review and the increase of GCA level related to the disciplinary hearing.

First, Butts claims that his due process rights were violated in the ICA hearings on December 20, 2011, December 29, 2011, and January 5, 2012. ECF No. 2 ¶ 13. These hearings allegedly concerned his removal from general population, the possibility of increasing his security level, and the reduction in good time earning level outside of the typical annual review. *Id.* Butts argues that even though ICA hearings are separate from the actual disciplinary hearing where guilt or innocence is determined, the decisions made at the ICA hearings "[a]ffect the conditions of confinement and the overall length of confinement." *Id.* ¶ 14. Specifically, Butts claims the prison violated his due process rights, and Fifth Amendment protection against double jeopardy, when it denied his request to put on evidence in the form of witness statements, denied him an opportunity to contest prison official statements used against him, and denied his request to have an advisor present. *Id.*

At the first two ICA hearings, Butts' housing assignment within the prison was changed from general population, to segregation pre-hearing detention, to segregation-isolation, and his good time credit level and facility assignment were not changed. *See* ECF No. 40 Ex. 2 at 5, 12.

By not altering Butts' good time credits or expected release date, these hearings do not implicate Butts' due process rights. *See Wolff*, 418 U.S. at 547 (differentiating between two kinds of punishment: "The first is the forfeiture or withholding of good-time credits, which affects the term of confinement, while the second, confinement in a disciplinary cell, involves alteration of the conditions of confinement," and holding that a prisoner is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right [of good credit time] is not arbitrarily abrogated."); *see also Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[Changes] in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison."); *Nicholson v. Carroll*, 458 F. Supp. 2d 249, 251 (D. Del. 2006) (denying petitioner's § 2254 application as failing to assert a cognizable claim on federal *habeas* review when "the sanctions against petitioner did not involve any loss of earned good time credit; he was only confined to administrative segregation for 15 days.").

Regardless, the Court would find that Butts' due process rights were not violated in any of the three ICA hearings, including the last hearing where his security level increased from Level II to Level III, and his GCA changed, which resulted in a later expected-release date.

1. December 20, 2011 ICA "Pre-Hearing Detention Assignment" Hearing

The institutional charge resulting in the underlying disciplinary hearing allegedly occurred on December 15, 2011, and Butts was served with notice of the disciplinary offense report and hearing on the same day. ECF No. 2 Ex. 1; ECF No. 40 Ex. 2 ¶ 4. As a result of the institutional charge, Butts was immediately put on "pre-detention hearing status," ECF No. 40

Ex. 2 ¶ 4, which requires an ICA hearing to determine Butts' "pre-hearing detention assignment," *i.e.*, where Butts would be housed pending the disciplinary review. *See* OP 830.1(IV)(B)(2)(b) ("Types of hearings: Formal Due Process Hearings [to determine] Pre-Hearing Detention Assignment). This pre-hearing detention assignment ICA hearing was held on December 20, 2011, the first ICA hearing of which Butts complains. ECF No. 40 Ex. 2 at 2, 5.

At this hearing, under the prison's procedures, Butts was permitted to: "Be present at the hearing; remain silent; have a counselor or other employee present to advise; be advised verbally at the hearing and in writing within five working days of the ICA's recommendation and reason for the decision; receive a copy of action of the final approving authority; access the offender grievance procedure to appeal all classification decision." OP 830.1(V)(A)(3). However, because this was a "pre-hearing detention when a disciplinary charge has been served," Butts was not entitled to "hear the reporting officer's statement and to call and question witnesses." *See* OP 830.1(V)(A)(4). Therefore, contrary to Butts' contention, he was not entitled to hear and cross-examine the officer's statement, and he was not entitled to put on evidence or call witnesses at this hearing. Rather, he was only entitled to have an advisor present. *Id.*

After ultimately holding that inmates are not always entitled to cross-examine witnesses and to appointed counsel at institutional hearings, the Supreme Court noted that when designing such procedural safeguards, it is best "to leave these matters to the sound discretion of the officials of state prisons." *Wolff v. McDonnell*, 418 U.S. 539, 566, 569 (1974) (holding an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."). As a matter of law, at the pre-hearing detention

assignment ICA hearing, Butts was not denied due process of law when he was not allowed to cross-examine the officer and present his own evidence and witnesses. Instead, by being present at the hearing and by receiving the assistance of staff counselor W. Fegan, *see* ECF No. 40 Ex. 2 ¶ 5, Butts was afforded all the process he was due under OP 830.1(V)(A)(3)-(4); *Wolff*, 418 U.S. at 563-72. Therefore, the Court would find that Butts was not denied due process of law at the December 20, 2011 hearing when he was ultimately housed in "segregation pre-hearing detention" pending his underlying disciplinary hearing. ECF No. 40 Ex. 2 at 5.

2. December 29, 2011 ICA Post-Disciplinary Hearing Assignment Review

After Butts was convicted of "threatening bodily harm" at the December 28, 2011 disciplinary hearing, he was advised that the ICA would meet again the following day, and he waived his right to 48-hour notice. *See* ECF No. 40 Ex. 2 at 11. Again, under the prison's operating procedures, but now because he had been convicted at the disciplinary hearing, Butts did not have the right to hear the reporting officer's testimony, cross-examine witnesses, and put on his own evidence or call witnesses on his behalf. OP 830.1(V)(A)(3)-(4) ("Hearings based on a documented disciplinary conviction."). Butts exercised his right to be present at the hearing, where it was determined that 25 days in isolation was appropriate, and his internal status was changed to "segregation-isolation." ECF No. 40 Ex. 2 at 12. While there is no indication on the exhibits provided that Butts was provided a staff advisor at this hearing, Butts does not make a specific allegation of a due process violation in this regard, and moreover, fails to allege any prejudice as a result of not having an advisor present.

Under the prison's operating procedure, the counselor advisor is present to ensure the inmate understands the nature of the proceeding, ensure the inmate is eligible for the type of review scheduled, and available should any additional solutions or courses of action need to be

offered. OP 8301.1(IV)(D)(3). The purpose of this hearing was an internal status review to determine Butts' housing assignment after he was convicted in the disciplinary hearing the day prior, with a punishment of 25 days in segregation-isolation. *See* ECF No. 40 Ex. 2 at 11. This was not the venue or hearing for Butts' to challenge the previous conviction or punishment for "threatening bodily harm," which could ultimately affect the term of his confinement. Rather, it was a hearing to review his previous pre-hearing detention housing assignment (segregation for pre-hearing detention), and make necessary changes in his housing status after the punishment for the disciplinary violation had been imposed (segregation-isolation for 25 days). In other words, this hearing did not necessarily affect Butts' liberty interest, because it "involve[ed] alteration of the conditions of [his] confinement," *i.e.*, segregation and isolation versus general population, and not the calculation of good time credits, which is a statutory creation that "is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff,* 418 U.S. at 557. Therefore, in accordance with the prison's operating procedures, the Court would not find a due process violation in this specific hearing.

3. January 5, 2011 ICA Status, Good Time and Transfer Review

Butts was provided notice of this third ICA hearing to review his internal status, good time level, and transfer on January 5, 2012, where he waived his right to 48-hour notice. ECF No. 40 Ex. 2 at 13. Again, under the prison's operating procedures, but now because he had been convicted at the disciplinary hearing, he did not have the right to hear the reporting officer's testimony, cross-examine witnesses, and put on his own evidence or call witnesses on his behalf. OP 830.1(V)(A)(3)-(4) ("Hearings based on a documented disciplinary conviction."). Similar to

the previous hearing on December 29, 2011, there is no documentation that shows Butts was appointed a staff advisor for the hearing. *See* ECF No. 40 Ex. 2 at 26-27. However, the Court again would find no due process violation, because Butts fails to allege any prejudice as a result. Indeed, at the hearing, Butts' only statement was: "I really don't have any questions, the only questions I have are dealing with the transfer and what places I could go and how long it would take. Other than that, I don't have anything to talk about." *Id.* at 26. Therefore, even though this hearing resulted in an elevation of his good time level from II to III and a facility transfer, from the hearing documentation itself, the Court can find no prejudice attached to the fact that Butts might or might not have been provided a staff advisor. Instead, because the prison officials complied with the VDOC standard operating procedures, the Court would find no violation of due process. *See Wolff*, 418 U.S. at 570 ("At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings. Where an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.").

### D. Ground Two: denial of due process in the underlying disciplinary hearing.

Next, Butts claims that he was denied due process at the underlying disciplinary hearing for the "threatening bodily harm" charge because: (1) the hearing officer was not objective and impartial; (2) he was denied the opportunity to present witnesses on his own behalf; and (3) he was not given an inmate advisor within the time limits established by the prison's operating procedures. On December 15, 2011, staff member (or reporting officer) S. L. Webbe charged

Butts with a Category II disciplinary violation for "threatening bodily harm" (212). ECF No. 40

Ex. 1 at 14-16. Webbe claimed that Butts came into her office requesting copies, and that after

double-checking, she advised Butts he had a negative balance on his account, and therefore could

not provide copies for him. *Id.* Specifically, Webbe stated in her report:

> Offender Butts came into the Counselor's office (2A) at 1600 requesting copies.
> I, Counselor Webbe[,] informed offender that his account was verified with
> inmate accounting and he has a negative balance. Offender Butts stated[,] "just
> make the copies and make my account negative I get money every month." I
> called operations officer K. Ware to confirm policy to see if copies could be made
> with the offender's negative account. The offender became very defensive and
> began to yell at me and I felt very threaten[ed] from his actions. He was told to
> provide proof that there was a deadline of what legal copies needed to be made
> and he needed to leave because he was being argumentative. At approximately
> 1620 Offender Butts returned to the Counselors office waving a paper in my fact
> saying[,] "here's the deadline, the copies need to be made today[.]" I informed the
> offender that Ms. Ware will call me back tomorrow to make sure we were within
> policy to see if we can make his account negative again. Offender Butts at that
> time while standing over me began to raise his voice and told me[,] "I should have
> made the copies 3 weeks ago and he has been asking since then [ . . . ] I'm tired of
> your attitude, you [are] old enough to be my daughter [ . . . .] You wait and watch
> you [are] not going to have a job[.]" I told Offender Butts to move back and leave
> my office and he would not he began to move in closer over me. He stood over
> me yelling. I told him to leave again and he walked towards the door. I said "if
> you [are] not happy file another grievance[.]" Offender Butts opened the door
> again and walked back into my office and said "you just wait, watch what's going
> to happen[.]" I told him to leave, he slammed the door. Offender Butts['] gestures
> and body language were very intimidating.

ECF No. 2 Ex. 1 at 1-3.

1. Impartiality of the Hearing Officer

Butts claims that pursuant to "D.O.P. 861.1(IV)(F)(1)(c) . . . the hearing officer [must] be

an impartial decision maker," and that on previous occasions, he has heard Mr. Blackwell, the

hearing officer for his disciplinary hearing, make statements that show his bias against inmates.

ECF No. 2 ¶ 16 ("Mr. Blackwell has stated to the petitioner that he- 'does not believe anything

that an inmate has to say without proof. They all lie.'"). Specifically, Butts argues that because

he and the reporting officer were the only witnesses to the incident, "the only defense that the petitioner could put before the hearing officer was to show that statement made by the reporting officer was not all true and that it was false . . . [which] could only be done by having witness statements from **staff members** who could confirm the petitioner's statement and refute the reporting officer's statement of events . . . ." *Id.* (emphasis in original).

The substance of this claim lacks merit. "[The hearing officer's] explanation that the evidentiary standard for proving plaintiff's guilt of the infraction is relatively low is a correct statement of law. As long as there is some evidence in the record to support the factual findings of the adjustment decision, a federal court will not review its accuracy. Due process is satisfied if the disciplinary hearing decision was based upon 'some evidence.'" *Germain v. Nastri*, No. JFM-11-810, 2012 WL 527582, at *5 (D. Md. Feb. 15, 2012) (holding the hearing officer's statement that inmate would be found guilty if he proceeded with a hearing "is not enough, alone, to establish an absence of impartiality.") (citing *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985)); *see also Sadler v. Young*, No. 7:04cv580, 2006 WL 1214073, at *9 (W.D. Va. Apr. 28, 2006) (holding that a hearing officer stating that she did not "like inmates that assault her officers" was, standing alone, not evidence of bias) (citing *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996)).

Here, Hearing Officer Blackwell's alleged statement that he "does not believe anything that an inmate has to say without proof," standing alone, is an assertion of evidentiary requirements in the hearing, and not necessarily probative of bias, similar to the cases discussed above. A hearing officer's determination of credibility, or lack thereof without supporting evidence, is not *per se* bias, or a violation of Butts' due process right to an impartial hearing officer. *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996) (finding that without more,

14

an institutional hearing officer's determination of credibility or lack thereof, is not evidence of bias). Therefore, the Court would find that the hearing officer's alleged statement does not demonstrate impermissible bias and thus did not violate Butts' due process rights.

2. Denial of opportunity to present witnesses on his own behalf.

Next, Butts' claims that he "requested several witness statements to be admitted into the hearing in order to show that the statements concerning the reporting officer's awareness of copy requests . . . were not true [and that such statements were] to go toward the credibility of the reporting officer and the fact that she was making this charge up in retaliation of the petitioner writing grievances on her." ECF No. 2 ¶ 17. The hearing officer held that the statements were irrelevant and did not factor into the final decision. Butts argues that such a denial was a clear violation of his right to put on witnesses and evidence on his behalf. *Id.*

Butts requested the following individuals as witnesses for the following reasons:

a) Counselor Smith, ECF No. 40 Ex. 1 at 17 ("On Dec. 1, 2011 I was sent [to] Mr. Smith by Ms. Galloway to have copies made. He made the copies. This shows that Mr. Butts had other ways to make copies and did not need to threaten or force Ms. Webbe to make copies.").

b) Officer Lee, *id.* at 18 ("Worked Bldg. 2 booth on 12/12/11. I asked her about contacting Ms. Galloway about making copies because Ms. Webbe refused. She is aware that this has been going on for weeks. Ms. Webbe denies that I have been requesting the copies. This will show that Ms. Webbe is not being truthful and that it is the counselor's job to make copies for inmates.").

c) Counselor Supervisor Galloway, *id.* at 19 ("[She] is aware that I have written complaint[s] about Ms. Webbe's refusal to make legal copies, has made copies for me in

the past (3) weeks, and informed me to see her if I needed anymore copies. Can confirm that I have another avenue to make copies and that threatening Ms. Webbe is unnecessary.").

d) Officer Farina, *id.* at 20 ("[He] is a Bldg. 2 officer and is aware that I have asked Counselor Webbe to make copies and she refused. I have asked him to make copies. Ms. Webbe denies that I have been asking her to make copies. Officer Farina can confirm this, it shows that she is not being truthful.").

e) Officer Maheu, *id.* at 21 ("[He is the] Bldg. 2 floor officer [and] was aware of my need for copies. Tried to get Ms. Webbe to make copies for me on 12/12/11. She refused. He is aware that it is the building counselor's job to make copies and that she refuses to make the requested copies. Ms. Webbe denies this.").

f) Counselor Galloway's Secretary, *id.* at 23 ("On the day of the alleged offense at about 3:30 p.m. I stopped by Ms. Galloway's office to have legal copies made because Ms. Webbe refused earlier in the week. Ms. Galloway was not in, another secretary told me that Ms. Webbe would make the copies and she would call ahead. She sent me to Ms. Webbe on the date of the charged offense.").

All requested witnesses were deemed not relevant to the underlying offense and therefore witness statements were not obtained. *Id.* Conversely, Officer Prime's statement was considered relevant and was submitted for review during the disciplinary hearing. *See* ECF No. 40 Ex. 1 at 26 (the officer spoke with Butts as he exited Ms. Webbe's office and stated that he seemed "excited and agitated but at no time was he aggressive or verbally abusive."). Butts also submitted requests for documentary evidence, of which one request was determined relevant, while the other was deemed irrelevant to the charge. *See id.* at 22, 25.

16

Pursuant to the prison's operating procedures, prior to the hearing, the Institutional Hearing Officer ("IHO") must "review any witness request forms submitted by the accused offender to determine relevance to the disciplinary offense report." OP 861.1(XIV)(A)(1) (emphasis in original). Moreover, the "IHO shall examine each witness' statement for relevance and repetitiveness." OP 861.1(XIV)(A)(5). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply." *Wolff*, 418 U.S. at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). Federal courts have adopted a policy of minimum intrusion into the affairs of state prison administration, which enjoys wide discretion in their operations. *Breeden v. Jackson*, 457 F.2d 578, 580 (4th Cir. 1972).

Here, even under a *de novo* standard of review, the Court will not second guess evidentiary determinations made by the IHO. Butts and Webbe were the only two individuals in her office at the time the alleged event occurred, and all of the witnesses from whom Butts wanted statements were credibility witnesses who in large part could testify only about the procedures he utilized in the past to make copies, and not about the alleged threatening conduct. Nothing from the proposed statements contradicted the statement provided by Webbe regarding Butts' threatening behavior, and the IHO was acting within the established operating procedures in determining what pieces of evidence were relevant or not. *See* OP 861.1(XIV)(A)(5). Therefore, the Court would find that Butts' due process rights were not violated when the IHO examined each proposed witness statement and determined that they were not relevant to the underlying disciplinary offense.

3. Inmate advisor provided outside the time limits prescribed by operating procedures.

Butts next argues that "the inmate advisor was not provided until (15) minutes before the

17

hearing commenced. This did not allow the petitioner the opportunity to have time to discuss the charges with his advisor and to get feedback." ECF No. 2 ¶ 18. Butts claims that additionally, the advisor "was not able to take part in the choice of witnesses to request, the questions to ask of the reporting officer, nor the approach to have [taken at the hearing, which] adversely impacted ·the petitioner's ability to defend himself at the hearing." *Id.* at 11-12.

Notably, the prison's operating procedures explicitly require that, "[w]hen the offender requests an advisor to assist in considering the *Penalty Offer* or preparing *Reporting Officer Response Form*, *Witness Request Form*, or *Request for Documentary Evidence*, the IHO or OIC must ensure that a staff or offender advisor is provided within the 24/48-hour response period." OP 861.1(IV)(G)(11). The Respondent fails to address the timing of the appointment of the advisor, and instead makes the conclusory statement that "Butts was provided an offender advisor to assist him at his disciplinary hearing." ECF No. 40 at 7-8 (citing the sworn affidavit of Warden Diggs, which also fails to discuss the timing of the appointment). Therefore, without more, the Court is left to conclude that the Respondent violated the express terms of the standard operating procedures by not appointing Butts an advisor within the 24/48-hour period dictated by the regulations.

However, due process undoubtedly does not require that an agency's actions be perfect or mistake-free. *Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("The Due Process Clause simply does not mandate that all governmental decision making comply with standards that assure perfect, error-free determinations.") (citation omitted). Rather, the inquiry must be whether the Petitioner was given a fair opportunity to be heard through post-deprivation review, using procedures that are "designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be."

*Mackey*, 443 U.S. at 13 (citing *Barry v. Barchi*, 443 U.S. 55, 64-65 (1979); *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).   Moreover, the Court is aware that the process at issue here "take[s] place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Wolff*, 418 U.S. at 561.   Regardless, "significant departures from stated procedures of government . . . may, if sufficiently unfair and prejudicial, constitute due process violations." *Jones v. Bd. of Governors*, 704 F.2d 713, 717 (4th Cir. 1983) (citing *United States v. Caceres*, 440 U.S. 741, 752-53 n.15 (1979)).

In this context, however, when discussing the value of providing inmate advisors during disciplinary hearings, the Supreme Court premised this right on the assumption that the inmate at issue was "within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing," and specifically gave the example of "[w]here an illiterate inmate is involved." *Wolff*, 418 U.S. at 570.   Indeed, the advisor's main purpose is basic: "assist the offender in understanding the disciplinary procedure and as needed in the disciplinary process." OP 861.1(G)(1).   "Although the advisor is *not expected to serve as an advocate* for the accused offender, the advisor and the IHO are expected to ensure the offender receives a fair hearing." OP 861.1(G)(12) (emphasis added).   With this most basic responsibility in mind, it is also apparent to the Court that if Butts did not understand the nature of the proceeding, or if he needed more time to work with the advisor in advance to fill out the appropriate witness and documentary evidence forms, then his proper remedy was to request an authorized continuance. *See* OP 861.1(XIII)(B)(8) ("Authorized continuances are: To obtain an appropriate interpreter/translator/advisor to assist the offender.").   However, Butts did not avail himself of this remedy, likely because he did not need the assistance of an advisor to fill out the pre-hearing

19

paperwork and evidence forms.  Indeed, in this matter alone, the record is full of forms that Butts quite aptly completed himself.  *See* ECF No. 40 Ex. 1 at 9, 17-25.  Furthermore, given Butts' familiarity with the disciplinary hearing process, it is not likely that he required the assistance of an advisor to "understand the disciplinary procedure" and to assist in filling out forms he had successfully filled out before.

Therefore, while it is possible the Respondent failed to follow the explicit directive of OP 861.1(IV)(G)(11) by not appointing Butts an advisor with the 24/28-hour response period, such a departure is not significant enough to be "sufficiently unfair and prejudicial [and therefore] constitute due process violations."  *See Jones v. Bd. of Governors*, 704 F.2d 713, 717 (4th Cir. 1983) (citing *United States v. Caceres*, 440 U.S. 741, 752-53 n.15 (1979)).

### E. Ground Three: insufficient evidence to sustain "threatening behavior" violation.

"Federal courts will not review the accuracy of a disciplinary committee's findings of fact."  *Sadler v. Young*, No. 7:04cv580, 2006 WL 1214073, at *9 (W.D. Va. Apr. 28, 2006) (citing *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980)).  "Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious." *Id.* (citing *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 455 U.S. 992 (1982)).

Here, Butts argues that the evidence presented "describes a (222) charge of insolent language and behavior," and not a (212) charge of threatening bodily harm.  ECF No. 2 ¶ 19. However, as Butts himself notes, as a petitioner challenging the sufficiency of the evidence, he bears a heavy burden.  *Id.* (citing *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)). Based on the reporting officer's disciplinary report, setting forth Butts' allegedly aggressive conduct in which he "stood over her yelling [and stated] 'you just wait, watch what's going to happen," the combination of which made the staff member feel "very intimidate[ed]," *see* ECF

No. 2 Ex. 1, and the evidence submitted with the briefs, the Court would find that the evidence was sufficient to sustain a conviction for threatening behavior, and the Court would not disturb the findings of the IHO.

## III. RECOMMENDATION

For these reasons, the Court **RECOMMENDS** the Respondent's Motion to Dismiss, **ECF No. 39**, be **GRANTED**, and Butts's Petition for a Writ of *Habeas Corpus*, **ECF No. 1**, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV. DISPOSITION OF OUTSTANDING MOTIONS

To the extent Petitioner included in his reply memorandum a request for "recusal/motion for change of venue/motion for sanctions," those motions were previously DENIED on July 25, 2013. *See* ECF No. 47.

## V.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Butts is notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a

judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to forward a copy of this Report and Recommendation to the Petitioner and counsel of record for the Respondent.


Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
October 21, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Wayne D. Butts, #1071962
Powhatan Correctional Center
3600 Woods Way
State Farm, Virginia 23160
*Pro Se* Petitioner

Mr. John M. Parsons
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
Counsel for Respondent

Fernando Galindo
Clerk of the Court

By:

Deputy Clerk
October 22, 2013